*12 Opinion of the Court, by
Judge Owsley.'
THIS was a bill in chancery exhibited by. Timber-lake against Tibbs and Clarke, to be relieved against a judgment at law recovered by Tibbs, as assignee of Clarke, on a note for one hundred dollars, which was executed by Timberlake to Clarke in August 1817, and made payable the first of January thereafter,
In his bill, Timberlake charges, that the note was g'ven by him for the price of a horse which he purchas-of Clarke; that at the time he made the purchase, the horse was lame in one of his fore legs; hut that rely-*n§ on assurances of Clarke, together with those of
Tibbs, with whom Clarke was then in company, that the horse had recently, on the night before, at-Fostle-^bwait’s tavern in Lexington, received bis lameness, he-was induced to believe the lameness of the horse not to be of a character calculated to produce any serious or permanent injury to him, and concluded the purchase by Clarke’s undertaking that the horse should shortly thereafter recover from his lameness, Timberlake also alleges, that at the time of making the contract, he was under the impression that the horse was the property oi^ Clarke, and accordingly, in the presence of Tibbs, executed his note to Clarke for the price, payable the first January, 1818; that whilst he was contracting with Clarke, Tibbs took a lively interest in the trade, and united with Clarke in representing the horse to have received his lameness the night before, and that it would *13 Be shortly removed; but that he has since discovered» that the horse, at thetime of the sale, .was hi fact the property of Tibbs, and that the note which was given for the price, has since,.for no other consideration than' that of his right tothe horse, been assigned to him by Clarke. Timberlake moreovér charges, that the horse at the time of the sale, was affected with a chronic and permanent lameness; and that Clarke and Tibbs, well knowing the nature and extent of the lameness, concealed the same from him, and the more easily to effect their fraudulent purpose, conceived the design of uniting their exertions to sell the horse, making Clarke the instrument to propose a sale, whilst Tibbs would aid m representing the state and nature of the apparent lameness. Timberlake finally alleges the conduct of both Clarke and Tibbs, in making the sale, to be fraudulent; that after discovering the fraud and finding that Tibbs was the rightful owner of the horse, and had obtained an'.assignment of the note Which had been given for the price, fie offered to return the horse to Tibbs and cancel the contract; but Tibbs positively refused to do- so. The bill prayed and obtained an injunction, and asked for the appropriate relief, &c. - ¡
Clarke admits making sale of the horse for the price of $100, and having received the note of Timberlake therefor, as charged in the bill. He admits that the horse, at the time of sale, belonged to Tibbs; but denies having been concerned in the sale for any fraudulent purpose.1 Hé. states that he was in company) with Tibbs in Paris, and knowing Tibbs was desirous to-Sell one of two horses which he then had, and discovering that Timberlake wished to purchase, he proposed selling any one of the three horses which he and Tibbs then had;- that Timberlake made choice of the horse belong-ingto Tibbs, and believing the lameness to be of recent occurrence and - not calculáted to produce any permanent injury,-he gave such information .to Timberlake. and, in fact, closed the-’contract with him. Pie. admits that before the contract - was finally closed, -Tibbs, who was absent when the contract was first-proposed, .came up, and may have also stated the. lameness of the horse to' be of recent date ;■ but he denies that the failure of Tibbs'or that of himself, to disclose the . true state of the right of property in .the horse,-, .was, the - result of a preconcerted scheme to defraud afiy person in the sale *14 of the horse; but charges, that what he did was the spontaneous effusions of an honest desire to aid his acquaintance and friend, in making what he supposed' an honest sale of the horse.. He denies all fraud, &e.
Tibbs admits the horse to have been his when the purchase, was made by Timberlake; but denies all fraud wherewith he is charged in the bill. He denies that the horse, at the time of sale, had either a chronic or permanent lameness, and charges that the horse had, recently before the contract, by some means become slightly lame in one of his legs, and that when the contract was progressing between Clarke and Timberlake, he made an honest and faithful disclosure of all he knew about the lamenesss, to Timberlake. He admits that in consequence of the horse having belonged to him, Clarke has since assigned to him the note which was given by Timberlake for the price. He insists that Timberlake is entitled to no relief in a courtt of, equity, and that his bill ought to be dismissed, &c.
The court, on a final hearing, pronounced a decree-making Timberlake’s injunction perpetual against the-judgment at law, and compelling the defendants in that court to pay costs. • '' ■
That at the time the contract was made, the horse labored under a disease which finally terminated in his death,-cannot, we apprehend, be seriously doubted; Several witnesses who appear to have observed the progress of the disease, unite m stating, that from the time of Timberlake’s purchase, the horse cotatinued lame,sometimes better and again worse, until his death; and that throughout the whole time the horse was well kept until shortly before his death,' when no care or "attention was thought to be of any benefit. It was not until about eleven months after Timberlake purchased the horse, that he died; but from the statement of the' witnesses, it is pretty evident, that the cause of' the lameness finally produced his death. No other cause ■for his death is pretended, and none other so probably produced the effect.
But whether or not, át the time of the contract, either Clarke or Tibbs knew the lameness, to ' have been of a fixed and permanent nature, ánd were guilty of fraudulently concealing the fact from Timberlake,da involved in more doubt. We are inclined, however, from all the circumstances,'to adopt the affirmative of *15 the proposition. It is true, several witnesses state, that they knew the horse previous to Timberlake’s.purchase, and they never understood him to be lame or in any manner diseased. But we are told by other witnesses, who were also well acquainted with the horse after the purchase, that the lameness was not at all times of that palpable nature, as to be discoverable on a slight inspection; and it may have been at those times when1 the lameness was least visible, that the attention of those witnesses who knew nothing of the unsoundness, was directed to him. And that such was most probably the case, and that Clarke and Tibbs knew the horse to be affected by a permanent lameness, derives additional strength from the fact of their having represented to Timberlake, when contracting with him, that the horse received his lameness the preceding night in Lexington, whereas it'is proved that on a day shortly before, the horse had been offered for sale by Tibbs in Winchester, and that he was them lame. And the presump- ' lion against Clarke and Tibbs derives increased strength from their manner of contracting; for if no unfairness was intended, why was Clarke the seller of a horse which belonged to Tibbs? and after the contract was made, why take the note for the price to Clarke instead of Tibbs, to whom it has been since assigned?
Assuming, therefore, the conduct of Clarke and Tibbs to have been fraudulent, we cannot hesitate in concifrring with the court below, in the decree which it pronounced.
We know, that under such circumstances, a court of equity takes jurisdiction of the matter for the purpose of cancelling the contract, and that generally to enable itrto do so, the purchaser seeking the aid of the court, should, recently after discovering the fraud, restore the thing purchased to the seller, or offer to do so, and demand a canceiment of the contract. But it should not be forgotten in this case, that the horse was lame' when he was purchased by Timberlake, and from the nature of the contract and the representations of Clarke and Tibbs, some time was necessary before Timberlake could be expected to ascertain whether the lameness was such as he had been assured it was. Timberlake could not, therefore, be under any necessity to return the horse recently after the contract; it was incumbent on him to offer to do so after discovering the fraud, and *16 he, has proved that after making that discovery, he, through an agent, desired Tibbs, who then held his note, t<? cancel the contract, and name a place and time when and where the horse should be returned, and that in reply he was informed by Tibbs, the horse would no* received. After receiving this reply, it was not, we apprehend, incumbent on Timberlake to perform the vain and idle task of pursuing Tibbs and making a personal tender of the horse; but that under such circumstances it was proper for him to abandon the contract and seek relief in a court of equity, for the purpose of obtaining a cancelment of it, especially as the horse, instead of a benefit to Timberlake, had continued tobe an expence and incumbrance to him.
3 Term" Re 683, i Peters’ Rep. 24. *
The decree must, therefore, be affirmed with costs.